We have the next case of Linda Bailey v. Valerie Rice v. Specified Credit Association. We have Mr. Long for the appellant and we have Mr. Steele for the appellee. You may begin, Mr. Long. I'd like to speak to the issue of the judicial admission first. And I think I'll just address that issue without giving too many of the background facts. I found that the court always knows the facts as well or better than I do, so I won't. Being generous. Well, that's what I've observed, Your Honor. This is an interesting question, and that is whether a statement in a mandatory arbitration proceeding can be a judicial admission. I'm surprised that this hasn't come up before. I used to like being involved in precedent-setting cases, and I wish I could avoid doing it, but this one does appear to have the potential for being a precedent-setting case. A judicial admission is a deliberate, clear, unobtrusive statement of concrete fact within the knowledge of the party making the statement. That's what the Illinois Supreme Court has said in the case of In re, a state of Renwick, and it's said on other occasions as well. In this case, we have a gentleman, Michael Verde, who said at the arbitration hearing that his collection agency had, in fact, sent a letter. It was Exhibit A to the credit reporting agency. And the letter itself says at the bottom, this account has been reported to TransUnion Credit Bureau. And at the trial of the case, after the arbitration award was rejected, Mr. Verde said – well, he admitted making the statement, but then he said, I was mistaken. I looked into it further, and Doug Brinke, my partner, asked him if he was changing his position, and he said yes, and he hoped that the court would accept his – would agree with or believe the statement that he was making at the trial of the case. So there's no doubt that there was complete contradiction between what he said at the arbitration and what he said at the trial of the case, and it's not a matter that was vague. I mean, it was as concrete as it could be. Did he send that letter to TransUnion or didn't he? And I'm assuming for the purposes of making this argument that if he sent the letter, that that was a violation of the Fair Credit Reporting Act, because if I were to get into that, I probably wouldn't – as to whether that was or was not so, I probably wouldn't be able to address the question of whether this should be treated as a judicial admission. So I'm assuming that, as the arbitrators apparently had concluded, that if he sent the letter, that that was actionable, that was a violation of the Fair Credit Reporting Act. Mr. Long, can I ask you this? Under the arbitration rules, there's no discovery after the arbitration. So was this the first time that your client learned of this change in testimony? Yes, I mean, it was – it absolutely was. Would the record reflect that, or is that just – I guess by the look on his face? I guess you can tell from the surprise of Mr. Grady that – I mean, he doesn't elaborate on that. You can tell that he's surprised by it. But it's not as though there was some kind of – He hadn't been notified of that in advance of the hearing? No, not to my knowledge at all. Okay. And I'm anticipating the responses that Mr. Steele is going to make, but I – I mean, this is really the most interesting question in this case. Mr. Steele said that we waive the issue of the judicial admission. Well, the point I would make is that after thinking about this, I've concluded that this is something that's not waivable. And that's because the – well, there's a case that this court decided, Graff v. Carbondale Nursing and Rehabilitation Center, that says a judicial admission is not really evidence. It's a withdrawal of fact from the contention. And it seems to me that the – that a court, when it's made aware of the fact that there was this absolute contradiction between what was said before under oath and what's being said in the courtroom before, that the court itself needs to consider this matter. And a party's bringing out the fact that this absolute conflict is enough to raise the issue of a judicial admission. And there's a related doctrine – and I didn't cite this doctrine in the brief, but it's judicial estoppel. And that doesn't relate to a testimony so much as taking a position. And what the cases say on that is that a party's barred from taking a position that helps them out in one proceeding and then in a later proceeding taking a contrary position. And it says that that doctrine exists for the promotion of truth and for the protection of the integrity of the court system. And I think the same thing applies when you have a judicial admission. Just how edifying can it be to see a litigant state under oath one position, then finds out that – after he finds out that that causes him to lose the proceeding, to come back in a subsequent proceeding and take exactly the opposite position. And the Rennick case, the Eleanor Supreme Court's decision in Rennick, says that the doctrine of judicial admission exists in part to eliminate the temptation to commit perjury. Mr. Long, let me ask a question. Is there any other witness who could have verified one way or another whether this letter went out? Or, on the other hand, was all the information as to whether this letter was sent or not totally in the control of that one witness? Well, it was in control of that witness, other than – and they've suggested that we should have gone to TransUnion to find out. But the question is, why would you go to TransUnion when their letter itself says – their first letter says at the bottom of it, this account has been reported to TransUnion Credit Bureau. And Mrs. Rice testified that later on, I think December 11th of 2006, they gave her a notice that this has been reversed, it's been taken off of your credit report. And then at the arbitration hearing, he testified flatly that, yes, we did send this letter. Why would you be poking into that and hoping to prove that that was wrong? I'm not suggesting we should have. I'm just – my suggestion is it's a more egregious situation where a witness in this situation has total control over telling you one way or another. Yeah, that's true, with the possible exception of whether we could have gotten something from TransUnion. And even then, I don't know if that would have been enough, because that would have been subject to a hearsay objection, I would think, unless you wanted to take a deposition of somebody. But, you know, when you talked about the difference between the estoppel situation and the judicial admission, I don't know if it's apples and oranges to me, because I understand very clearly what you say about changing positions. But when you talk about the judicial admission of the fact, he is not saying that he didn't say what he said in the arbitration. But now he's giving an explanation and saying he was wrong. I see that as different than the estoppel situation, because basically it's unchanged whether or not he was wrong in the sense of what was – what the letter contained and what was transmitted to the client, whether or not he was mistaken or lied about whether or not they had, in fact, reported that. I'm not sure if this is a response specifically to the point you're making, but it seems to me, out of all the things that could possibly be in contention, this is about as concrete as it could get. Did he send the letter or didn't he send the letter? And was he personally the one to have sent the letter? Well, my understanding, based on the transcript of the trial case, was he just testified that – I think he testified, as I understood it, that he sent the letter. Personally. Well, he didn't use the word personally. I mean, I guess you could possibly read into that that his company sent it rather than that he personally dropped it in the mail. But he did say that they sent it. And so at trial he's taking the exact opposite position and says that he didn't send it. Now, there might be some things where – I mean, he could be a stop from doing that at the trial regardless of whether or not it's a judicial admission. I guess that's my point. You're talking about that judicial estoppel document? Yes. Well, that probably doesn't really apply because one of the elements you have to prove for judicial estoppel is that you benefited from the position that you took previously. Here we have the opposite situation. Yes, we do. He said it and he got hammered. So I'm going to like you for that. And I don't want to describe bad motives to this gentleman, but you could see how somebody might think, well, that's what I said at the arbitration hearing. I better not say that again. I better say something different. And it's precisely to eliminate that sort of problem that I think that when this absolute conflict is brought out by a party that the court itself has to address it and deal with it. And in any event, Mr. Grinke did specifically bring it up in a motion to reconsider, and I think he brought it up enough at the trial of the case because he made it as plain as he could make it that it was an absolute contradiction compared to what he had said at the arbitration hearing. So one other thing I might say on this, I spent some time looking to see if I could find any case which suggested that the doctrine of judicial admission is waivable by a party. I couldn't find it. The topic number you might want to check out here, this is what I checked out. It's 157K265 parenthesis 7. I think there are 97 cases under that headnote. I looked through that to see if there's any indication that if this comes up, that if you don't do the right thing or say the right thing, that it goes away and you waive it. There's no indication that that's the case. And I think the reason it shouldn't be the case is because of what this court said at Rath v. Carbondale Nursing and Rehabilitation Center, that it's not really evidence in the sense that an evidentiary admission is. It's like admitting a request to admit. You're saying, yeah, that's the case. And that just takes it off the table. It removes it from contention. So why would you then have to make a specific timely objection in order to preserve the evidentiary objection? Because there really is no evidentiary objection. The question is whether that has been removed from contention or not and because of the admission that was made. Once it was evident from the testimony and trial that the admission had been made, then it should be considered off the table, removed from contention. The second argument that Mr. Steele has made is that, well, it concerns the fact that this was an arbitration and you shouldn't be able to talk about what happened in an arbitration. And he cites Rule 93B for that. And Rule 93B does have some language in there that says that an arbitrator can't testify. I forget what the rest of it is about. You can't refer to the conduct of the arbitration as part of the case. But if you look at the committee comments to subsection B of Rule 93, it has some language in there. Now, this isn't the clearest thing in the world, but it has some language in there about the fact that where the taking of a transcript – it talks about other states. It says where the taking of a transcript is permissible, then that transcript can be used in evidence at the trial of the case. As I said, that's committee comment B to Rule 93. And the fact is a party can, if he wishes – I wish we'd done this in this case – can make a transcript at his expense of the proceedings at arbitration hearing. So that would suggest that things that are said – and the court might want to look at – again, Doug didn't mention this in his brief. Is that provided for in a specific rule allowing you to make a transcript? Oh, it's – well, local rule – St. Clair County local rules 1991 subparagraph H talks about that. Okay, not in the Supreme Court rules, but in the local rules? Yeah, not in the Supreme Court rules. It's only in the committee comment, which suggests that you can do that. I mean, it's strange how there's not as much precision or clarity in the rule and in the cases on this subject, but that's as close as I can come. That committee comment would suggest that you can make a transcript. Was that letter marked as an exhibit in the arbitration? You know, Doug, I assume that it was. I can't say that the transcript itself at the trial specific – it was marked as – Oh, I mean in the arbitration. It doesn't reflect whether it was marked as an exhibit in the arbitration as far as you know. Well, it must have been because – Okay. You know, I say it must have been, but I just – I don't know. We can check. He testified that he sent it. We can check. And do you know if it was produced in connection with the discovery in the case? Did the defendant produce it in discovery or did you just have it? Well, I think we had it because that was – I think that's the first communication we got. Okay. I mean, it was the first communication and a rather distressing one because it said that our client owed $10,210, which is completely wrong, and it said this account has been reported to TransUnion Credit Bureau. I was just wondering if in the course of discovery you asked them to produce all their documents and that was included. You know, I can't answer that because I didn't handle this from the start, and if I were to attempt to, I would just be guessing. That's all right, Mr. Long. Go ahead. But the point I would make about this is that there are cases which say that you can make a judicial admission by antitrust interrogatories, by responding to a Rule 216 request for admissions, by your testimony at a discovery deposition. I think that's what happened in N. Ray Rennick, the Illinois Supreme Court case, or by the statement of your – the clear statement of your lawyer case. If all those things can amount to judicial admissions, why wouldn't a clear statement under oath at an arbitration proceeding be a judicial admission? You know, the consequence of saying that it's not a judicial admission is that you give people a trial run, like a mock trial at the county's expense. I'm going to – and again, I'm not ascribing this to Mr. Verity. I'm just saying that that's – this is what could result from that view. You could say, well, I'll slant the testimony this way and see if I win, and if I don't win, then I'll come back with something different at the trial of the case. That's just completely contrary to the spirit of our judicial system, which is that when you go into court and testify under oath and make a clear statement, you're not free to come back later and say, well, forgive me, I was completely wrong. The truth is exactly the opposite of what I said before when I lost. But isn't that what happens in depositions and trials very frequently? Well, now that brings up the question as to whether you just have an evidentiary admission or a judicial admission. To have, as the Supreme Court said in Rennick, you have to have a deliberate, clear, unequivocal statement of concrete fact within the knowledge of the party making it. Okay, if in a deposition under oath I say that the light was green and then at trial I say the light was red. You've got – then that's a judicial admission because the Rennick case itself – I think it was the Rennick case – talked about a situation where something was stated in a discovery deposition and the court held that to be a judicial admission. So it's a matter of degree. I mean, a judicial admission is more than just a prior and consistent statement. It's something which is so clear-cut that the court will just not tolerate you changing your mind and saying, well, forget what I said when I said that the example you used is a good one. When I said that the light was green, it was actually red, I think that that would indeed be a judicial admission. And it's very strange to me that this hasn't come up before. Mr. Long, let me ask you this, just from a presidential standpoint, in this case there doesn't appear to be a dispute that he said this during the arbitration. No, that's true. But if we're to make a ruling that you can have a judicial admission during an arbitration, there could be – somebody could say, well, I didn't say that during the arbitration. There's no transcript. You can't call the arbitrator. I mean, we will be opening up a trial, as they say, a trial within a trial as to what was said during the arbitration. The answer to that, I would say, is that the party – and believe me, I'm going to have this discussion with my partner when I go back, all my partners, that we need to have a transcript made at our own expense, which is specifically permitted by the local rules. Now, in this case, I don't think a transcript is necessary because Mr. Verity, to his credit, you might say, admitted it. I mean, there's no doubt that this is what happened. So you're saying that if somebody admits it, or if there's a transcript, then it's a judicial admission, and if there's not – Well, if it meets the requirements set forth by the Illinois Supreme Court in the Inouye Rennie case, that's absolutely what I'm saying. Okay. If there's any doubt as to what he said or whether he said it, then I think that it can't be a judicial admission. But if there is no doubt, then I think it can be a judicial admission. I got you. Well, I think – let's see – I think I've covered the points. I'm anticipating, Mr. Steele, but I need to speak briefly about this business, about this letter, this least sophisticated debtor and unsophisticated debtor business. This was the second letter that was sent. And in that letter, there's a statement, once judgment is obtained, we'll garnish your wages. And the question is whether that is false and misleading and a violation of Section 1692E, which is a section in the Fair Debt Collection Practices Act. There's a case – there are two cases which talk about this. The one that's closest is Dutton v. Wolhart. It's a Delaware District Court case. We'll have the opportunity to read that, Mr. Long. Mr. Steele? Counsel, please support. Good morning. Good morning. My name is Bill Steele, and I represent the third-party defendant in this case, Specified Credit Association. I'd like to address first counsel's comments on the issue of whether or not Mr. Verity's statement at the arbitration hearing was a judicial admission, and therefore he should not be permitted, or we should not be permitted, to change what counsel is indicating was our position. I think it's important not to put the cart before the horse here. I would respectfully suggest that counsel is presuming that this is a judicial admission, and yet it is up to, in this case, the third-party plaintiff to demonstrate that it is a judicial admission, and there are certain things that they have to show to establish that it is a judicial admission. As counsel indicated, a judicial admission is a deliberate, clear, and unequivocal statement. As has been suggested, this is not like a discovery deposition or an evidentiary deposition or a request to admit or an answer to a written interrogatory. This is a statement made in a mandatory arbitration hearing at which there was no transcript, there was no recording made. Mr. Steele, there's really no dispute about the fact that he gave a contradictory statement because didn't he testify at trial? I said the opposite. There is no dispute that he made the statement. The question, though, is the circumstances of the question and answer and the context. I think it would be useful to look, again, because the only evidence of this statement is Mr. Verity's testimony at the trial, and here's the testimony, and Mr. Grinty is doing the questioning. Now, you remember that you had an arbitration hearing in this case. Mr. Verity responds, I do, I do. Question. And you also remember that you were under oath at that time. Answer, I do. Question. And at that time, do you recall telling me that, in fact, you had recorded that? Answer, I did mistakenly. Yes. Question. OK, so you said that it was recorded then. You had the letter stating that it was, and then you had a letter stating that it wasn't. And now you're changing your story to say, in fact, it wasn't reported. Answer, it never was reported. Correct. Question. So were to believe your testimony now as opposed to then? Answer, yes, sir, I'm hoping so. Now, I also asked Mr. Verity later on regarding that testimony at the arbitration hearing, which, frankly, came as a surprise to me. And I asked him, on December 11, 2006, your client called requesting the debtor be removed from the connection to TransUnion. Answer, that's correct. Question. At that time, was there anything to remove? Answer, there was nothing to remove. It was never reported. If it had been, if this debt had been reported to TransUnion, would that be reflected normally in this ledger that you've been testifying from? Answer, absolutely it would. Question. Before we came to court today, did you review this ledger? Answer, I did. Question. Is there anywhere in this ledger where it's indicated that you or anyone else from specified credit reported this debt to TransUnion? Answer, there is not. Question. Have you made an investigation as to whether this debt was reported to TransUnion? Answer, yes, I did. We came to find out this is one certain client we never even reported to TransUnion, Bailiful Properties. We did not report any of their accounts to TransUnion. And then I asked him about his testimony at the hearing. You said you had reported it, didn't you? Yes, I did. Question. Was that correct? Answer, that was incorrect, and I apologize. Question. Have you received any kind of report from TransUnion indicating that this debt was ever reported to them by you? No, and I investigated that with TransUnion, too, and there was never anything reported. Now, it seems to me that what we have here is a situation where the third-party plaintiffs' only shot at a recovery here is to prevent us from presenting our case. There is no doubt, there is no question, there is no dispute. They did not attempt to obtain any kind of a report from TransUnion with regard to whether or not this debt was reported. That was testified to by the third-party plaintiff at the hearing. She never requested anybody to do that. There was nothing in discovery indicating that there was a report made to TransUnion. And it's, I think, very important for this Court to keep in mind that just because a statement is made does not make it a judicial admission. It has to be a deliberate, clear, unequivocal statement. Now, in the transcript of the trial, I go into with Mr. Verity the fact that the statement on this letter that it had been reported to TransUnion, it's a form letter. It goes out on all of their letters, and that was testified to at trial. And he was shown the letter at the arbitration hearing and said, yes, we send it out. This was not a deliberate, clear, unequivocal statement that the law or the cases talk about. Mr. Steele, I want to ask, and I keep going back to the fact that, I mean, isn't there an issue about his intent to, I mean, obviously they intended to send this letter, or they intended to deceive the debtor into thinking that they sent the letter. I think, I don't know what the answer to that is, Your Honor. Well, I mean, it's got to be one of the two, doesn't it? No, I don't think it's that clear cut. On the one hand, and this is a testimony at trial, this letter is sent to everybody. But why is it sent to everybody? That's my point. It's sent with an intent, obviously. At the time that letter is sent out, it may very well be their intent to report it to. Because that's what it says they intend to do. That's right. And then the letter that was sent out that said we did report it, either their intent was that they, in fact, thought they had reported it, or they intended to deceive the debtor into thinking that they had reported it. Or they intended to report it and didn't, without any intent to deceive, which is a third option, which is what we suggest actually happened. There was really no evidence here that they intended to deceive the debtor in this case. And I don't think that really is suggested even by either Mr. Verity's testimony or the third party plaintiff's testimony at the trial. I really don't think there was any evidence that they were attempting to deceive. What they were attempting to do is collect debt. And the bottom line is Mr. Verity made a mistake when he said at the arbitration hearing that it had been sent out. There is absolutely no evidence that it had been sent out other than his testimony and that one line on the letter. And, in fact, the evidence at the trial is that it was never reported to TransUnion. And I would like to address one issue that Justice Donovan brought out earlier on, about whether or not this was the first indication at trial that Mr. Verity's testimony was that this report had not been made. And actually that's true, it is. But there was never any discovery taken prior to that arbitration hearing in which he was asked that question. He was never asked, was this reported to TransUnion? There was never an interrogatory sent to that effect. There was never a deposition taken of Mr. Verity. So while, yes, the testimony may have been a surprise at the trial, it's not because of any response to discovery that we made previously. It was just never brought up by the third party plaintiff. One of the things that I think this court needs to take into consideration is, you know, not everything that either a party, well, not everything that a party says under oath can be construed as a judicial admission. There is a language in the case law, which we cited in the brief, that the court must make a determination or a distinction between a deliberate, clear, unequivocal statement and a chance statement made by a nervous party. That's why it is so important in trying to determine whether something's a judicial admission that there be a transcript or a pleading or something in writing that the court can refer to and determine the context. We don't have that here. And the consequence of the court construing what we would suggest is a chance statement made by a nervous party, the outcome of construing this as a judicial admission is, in fact, that we are prevented from presenting our defense. And I would suggest to the court that this is exactly not the kind of case in which it should construe a statement to be a judicial admission. Without arguing the point of whether or not it should be considered a judicial admission, the language that you used about a chance statement by a nervous party, I'm having trouble understanding how that applies to his statements in the arbitration that he sent the letter and that he did report it and the letter shows he reported it.  Well, first of all, I think, well, that won't appear of record, but you've asked. No, it won't, but I'm having trouble understanding. Because I was there. Okay, so you're saying at that time he knew it had not been sent. Yes, actually, that is exactly what I'm saying. Okay, so at the time of the arbitration, he knew that despite what was stated in the letters, it had, in fact, not been transmitted to the transunion or whatever. I can absolutely, truthfully state that to the court. Okay. Based on everything I knew at the time. Okay, I'm a little confused then. I heard you say earlier his testimony was a surprise to you, and I took that to mean it was the testimony of the trial that was a surprise to you. No, the testimony of the arbitration. The testimony of the arbitration was a surprise to you. Okay. I'm glad we got that clarified because I thought you were talking to the other. I should have made that clearer. I apologize. So are you saying then that it just wasn't asked in such a way that it would have been brought out? No. And, again, this has been a while. I'm trying to recall the exact way the question and answer were asked. My recollection is that Mr. Grinke asked my client, showed him the letter, and to answer Justice Donovan's question, I believe it was marked as an exhibit at the arbitration. And he was asked about it by Mr. Grinke. And he said, the question was, was this reported? And he said yes. But, in fact, it wasn't reported, and he knew it at the time. The answer to that is yes. I wish I had a better explanation for that, and I don't. Other than this is exactly the kind of situation that the courts talk about when they're talking about a chance statement made by a nervous party. If you knew that at the time, why wasn't he rehabilitated at the arbitration through redirect examination? Respectfully, you're assuming I didn't make the attempt. Okay. He stuck with that testimony. He stuck with that position is what it's looking more and more like. Well, I don't know that I have a better answer for that than what you just said. He did say it more than once. I absolutely. But that's making it sound less and less like it was a chance statement of a nervous witness. It sounded like he had his position, and it stated that I sent it in to the credit. I mean, it sounds here like you were actually bolstering Mr. Long's position. Well, I can only tell the court what happened. I know, and you could not control your witnesses. Right. Frequently a problem. But getting back to the court's original question to me, or one of the court's questions, which was did he know at the time that he testified in the arbitration that it had not been reported to TransUnion, again, my answer to the court, based on everything I knew, was yes, he did know that. I can't explain why he testified the way he did. I would suggest, again, that the testimony at trial is really the truth, but that's not really what the court, I guess, is determining at this point. The court's determining whether or not we should be able to present that position. Let me jump to something else real quick. Can you make a judicial admission at an arbitration hearing? I would say this, Your Honor. The whole mandatory arbitration system is set up to attempt to resolve a case short of trial. That's the whole idea. If the court were to rule that something that a party says at a mandatory arbitration hearing can then become a judicial admission, that's going to make it much more difficult, I think, to use the mandatory arbitration system as a way to resolve the case. It isn't a mandatory mediation system. It's a mandatory arbitration system, which comes with a final conclusion. Certainly. I guess, and you probably pointed this out in your brief, but it's got under 93B, an arbitrator may not be called to testify as to what transpired before the arbitrator. Okay. And no reference to the fact of the conduct of an arbitration hearing may be made, but they just say the fact of it. And I can't find anything else within the rules? I can. Okay. I can't find anything else in the rules. I can't find anything else in the case law. Okay. There's nothing that prevents a witness from being impeached based on arbitration testimony if somebody has a transcript, is there? No, probably not, Your Honor, to be fair. But, again, we don't have a transcript here. And while there's no dispute that the statement was made, there's also no context given as to how the statement was made. What was the condition of the witness? Was he nervous? Was he not nervous? Was this a letter he wrote? Was it a letter somebody else wrote? Was it a form letter? Well, there was evidence it was a form letter. None of this kind of context appears in the record. And I would suggest to the court that that is the kind of evidence that the court needs in order to determine whether this was a deliberate, clear, unequivocal statement. And it's incumbent upon the appellant to do that, and it did not. Now, it would be very different, in my eyes, if you had the letter, and, of course, we know the letter says what it says, and he had, in the arbitration, had said, you know, I know this letter got sent out, but we checked it, and it never really did get sent to the credit people. And so he had this explanation. And so the question would be, would that be a judicial admission? Maybe, maybe not. But now we've got just the opposite situation. We have the fact that we've got the concrete letters, but that's all he stood by was concrete letters, knowing all along that that wasn't the case. Well, again, the testimony is what it is. You mentioned this ledger that he testified from at trial. Did he have that with him at arbitration? I don't remember, frankly, if he had it at the arbitration. I have this picture of you standing over him at arbitration saying, look at the ledger. Look at the ledger, please. Well, that was an interesting day. If I could also address myself to the issue of whether or not this issue was waived. It's hard for me to, and again, some of this I've not had a chance to look at before. This is a situation where clearly all the parties knew what the arbitration testimony had been. Both Mr. Grinke and I questioned Mr. Varaday with regard to these issues. You can finish your thought, Mr. Grinke. Thank you. At no time prior to his testimony on this issue did, or during the testimony or after the testimony, at the hearing or at the trial, at no time did they raise this issue. While counsel says he's been able to find no case that says that this is something that can be waived, I'm also aware of no case law that says it cannot be waived. There is surprisingly a paucity of case law on this issue. And again, in our opinion, it is something that can be waived, and by not objecting at the appropriate time, we believe they waive it. Thank you. Thank you very much, Mr. Steele, for your argument. Mr. Long, you have the opportunity to read that. I thought maybe perhaps I would read this last sentence, Committee Comment B to Rule 93. You can get this on Westlaw. It says, however, where a recording of testimony at the hearing is not prohibited, such testimony could be used at trial if otherwise admissible under the established rules of evidence of that jurisdiction. You're on Rule 93? 93. And it's Committee Comment B. I'm not sure if it's in the usual pamphlet that we have for the Supreme Court rules. So that's not as clear as it might be, but it suggests that if you can make a transcript, then you can certainly use the testimony to impeach somebody at trial, or you can use that testimony at the arbitration hearing as a basis for a claim of a judicial admission. Another thing I wanted to point out was that this is a strange situation where the letter itself says this account has been reported to the TransUnion Credit Bureau. Well, why hasn't a debtor entitled to just take them at their word for it? We haven't argued this, but it seems to me that that itself might be something that should be binding on somebody that they can't wiggle out of. But Mr. Baird is saying at the trial of the case, no, even though we didn't say these words specifically, but even though the letter says this, we didn't send it to the TransUnion Credit Bureau, that's really an admission of a violation under Section 1392E of the Fair Debt Collection Practices Act because you plainly cannot say something in the letter that you don't intend to do. But you didn't allege that it was part of your complaint. Well, no. Well, we didn't because our understanding, I mean, we're taking the letter at face value that they had sent. So here we're surprised with this saying no, even though it says that we didn't send it. Doug, Mr. Brinke talked about the possibility of amending his complaint on the record there, but he didn't move to do it. That's kind of where we're at now. Is there anything, is that remedy available to you now? Have you asked for that anywhere? Well, we've not asked for it to this point. One thing I meant to do and did not do is whether pleadings could be amended even at the appellate level. I don't know the answer to that. I mean, at first glance, I haven't found anything that says that it can be. But, again, watching just this letter, there was a subsequent communication by them to Mrs. Rice saying that, well, we've taken this off of your record now. So we had two statements before the arbitration hearing and a statement after the arbitration hearing, all of which were consistent with the idea that they had indeed sent this to trans-union creditors. And then all of a sudden, at the final case, the statement, no, we didn't do that.  Well, I don't know the exact page, but it's the negative remark that they had made. Apparently, our client, Mrs. Rice, was under the impression that they had sent in this information that she owed $10,000, which was absolutely not correct. That later, when they filed suit, they reduced it to $2,000-something, and then the whole thing was dismissed. So it appears that she didn't owe anything, which is the position she took from the beginning. And there's testimony that she repeatedly asked him for a breakdown and said that she didn't know. So it's just a strange thing to see somebody saying something in trial, which obviously is an admission. I mean, it doesn't exactly get him out of hot water. It gets him in a different kind of hot water, you might say. But that's just strange that he would do that. But in any event, our position is, as I've already said at length, that it was a judicial admission. Whether you're nervous or not, if you say something that is that plain, you can't back away from it. I mean, if the court would like to see cases on that, I've got one that I can cite to you, but since we didn't put it in our brief, I'm reluctant to do it without asking for a leave to cite additional authority. But there's at least one case which says if you clearly say no to something, then you can't go back at the end of discovery deposition, you can't go back to trial and say, well, I really meant yes, which is kind of the situation we have here. Well, what if they didn't do it? What are your damages? We get all done, we prove something, you know? That's true, and my suggestion there was that if the court decides to reverse because Judge Locono was wrong about the judicial admission, let Judge Locono address that. I mean, what Doug had requested was $1,000 on the Fair Debt Collection Practices Act, 100 statutory damages on the Fair Credit Reporting Act, plus 5,000 punitive damages and attorney's fees. There are some cases which say that if a violation is willful of the Fair Credit Reporting Act, you don't actually have to be entitled to some statutory damages without getting into proving what you need in the way of compensatory damages. But it's plain that there's not a whole lot of evidence in the record about what compensatory damages might have been here. That's why I would suggest that rather than the court thinking about trying to enter any sort of damages award, if it sees fit to reverse, that the case be sent back to Judge Locono for him to address that issue. Thank you. Thank you, Mr. DeLong. Mr. Steele, very interesting case, and we'll take it under advisement, render ruling, and due course.